AC-2000-49                                                      1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Bilbao Vizcaya de P.R.<br>        Demandante-Peticionario<br><br>                v.<br><br>Municipio de Vega Baja<br>        Demandado-Recurrido | Certiorari<br><br>2001 TSPR 60 |

Número del Caso: AC-2000-49

Fecha: 27/abril/2001

Tribunal de Circuito de Apelaciones:
                                Circuito Regional II

Juez Ponente:
                                Hon. Hiram A. Sánchez Martínez


Abogado de la parte peticionaria:
                                Lcdo. Carlos R. Sosa Padró

Abogado de la parte recurrida:
                                Lcdo. Juan González Santiago


Materia: Cobro de Dinero


        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Bilbao Vizcaya de
Puerto Rico

      Demandante-Peticionario

        vs.                        AC-2000-49        Certiorari

Municipio de Vega Baja

      Demandado-Recurrido

SENTENCIA

San Juan, Puerto Rico, a 27 de abril de 2001.

**I.**

    El Municipio de Vega Baja (en adelante "Municipio") y la Corporación Nortek Services, Inc. (en adelante "Nortek"), otorgaron un contrato de ejecución de obra el 17 de febrero de 1995. Dicho contrato establecía que el Municipio pagaría a Nortek $337,352.55 por la ejecución del proyecto. Como parte de los requisitos exigidos por el Municipio a Nortek, ésta sometió fianza por el costo total del proyecto. El contrato contenía una cláusula que prohibía la cesión de

todo o parte de dicho contrato a otra persona sin el consentimiento escrito del Municipio.

Por otra parte, Nortek y el Banco Bilbao Vizcaya (en adelante "BBV") otorgaron un contrato de préstamo el 28 de abril de 1995, mediante el cual, el banco le extendió a Nortek una línea de crédito de $650,000.00. Para garantizar el pago del préstamo, Nortek cedió al BBV el crédito proveniente del contrato de obra que había otorgado con el Municipio de Vega Baja.

Nortek y el BBV otorgaron el Acuerdo de Cesión sin obtener el previo consentimiento del Municipio. El mismo día en que se otorgaron el contrato de préstamo y el Acuerdo de Cesión, el BBV notificó el acuerdo al Municipio. Por su parte, el Municipio le contestó al BBV que entendía que el acuerdo era un grave error del banco, y que no había seguido el trámite requerido por el Municipio para poder reconocerlo. Por ende, el Municipio continuó pagando a Nortek y le hizo la totalidad de los pagos del contrato de obra directamente a dicha corporación, y no al BBV.

Eventualmente, Nortek se acogió a los beneficios de la Ley Federal de Quiebras. El BBV, entonces, le envió una carta de cobro al Municipio por concepto de los pagos hechos por el Municipio a Nortek luego de que el BBV le había notificado el contrato de cesión al Municipio. El Municipio hizo caso omiso de la mencionada carta.

El BBV demandó al Municipio por violación de contrato y para el cobro de $337,951.93, más intereses. El Municipio solicitó la desestimación de la demanda ya que el contrato de cesión mencionado estaba exceptuado de la aplicación de la Ley de Cesión de Cuentas por Cobrar, 10 L.P.R.A. sec. 581 *et seq.*, al tratarse de un contrato público de construcción pagado con fondos federales y municipales, y cuyo cumplimiento estaba garantizado mediante fianza. Igualmente, el Municipio hizo referencia a la prohibición de cesión del contrato que expresamente se había incluido en el acuerdo de ejecución de obra.

El BBV se opuso a la moción y adujo que, aunque el contrato no estaba cubierto bajo la Ley de Cesión de Cuentas por Cobrar, la cesión podía realizarse bajo las disposiciones del Código Civil sobre transmisión de crédito. Señaló el BBV que la cesión obligaba al Municipio ya que se puede ceder válidamente sin consentimiento previo del deudor, y aún en contra de su voluntad, siempre que se cumpla con el requisito de notificación. Añadió el BBV, que el Municipio había actuado de mala fe al continuar haciendo los pagos a Nortek. El BBV expresó además que lo que quedaba prohibido en el contrato de ejecución de obra era ceder el contrato, pero no el crédito.

El Tribunal de Primera Instancia denegó la moción de desestimación. El Municipio acudió al Tribunal de Circuito de Apelaciones, y dicho foro confirmó la decisión del foro de instancia por entender que, en los casos no cubiertos por la Ley de Cesión de Cuentas por Cobrar, aplicaba el Código Civil. El foro apelativo acogió el razonamiento del BBV en cuanto a la validez de la cesión sin consentimiento siempre que se notifique al deudor.

También concluyó que el contrato de obra sólo prohibía el traspaso del contrato de construcción, pero que nada disponía en cuanto al traspaso del crédito.

El Tribunal de Primera Instancia procedió entonces a dictar sentencia sumaria a favor del BBV y ordenó que el Municipio pagara de nuevo la cantidad pagada a Nortek y ahora reclamada por el BBV. El Municipio entonces acudió al Tribunal de Circuito de Apelaciones señalando que la sentencia atentaba contra la política pública de proteger las finanzas municipales y la sana administración pública.

El foro apelativo revocó la sentencia apelada por entender que la norma de derecho aplicada por el panel apelativo en la sentencia anterior era errónea y podía causar una injusticia. Por tanto, concluyó el segundo panel, procedía dictar una norma de derecho distinta, haciendo una excepción a la doctrina de la Ley del Caso. El Tribunal de Circuito de Apelaciones señaló que era imperativo que en el presente caso el Municipio diera su consentimiento a la cesión de los créditos del contrato, puesto que al ceder Nortek el crédito a favor de BBV, el Municipio corría el riesgo de que después Nortek abandonara la ejecución de la obra por carecer de fondos propios.

Oportunamente, el BBV presentó moción de reconsideración que fue denegada. Inconforme, el BBV acude ante nos alegando que el Tribunal de Circuito de Apelaciones erró: 1) al negarse a aplicar la doctrina de la Ley del Caso y revocar lo resuelto en contrario por otro panel de igual jerarquía, 2) al determinar que el contrato de obra prohibía la cesión del crédito, y 3) al concluir que estuvo justificado el Municipio al no cumplir con el Acuerdo de Cesión.

## II.

Este caso llega a nosotros mediante recurso de apelación de una sentencia del Tribunal de Circuito de Apelaciones. Sin embargo, acogimos el recurso como una petición de certiorari, por ser éste el recurso adecuado, y emitimos una orden de mostrar causa por la cual no se debía revocar la sentencia recurrida por carecer el Tribunal de Circuito de Apelaciones de jurisdicción al haberla dictado. Del expediente se desprendía que la apelación del Municipio a dicho foro apelativo fue radicada el 11 de marzo de 1999, 63 días después del archivo en autos de la notificación de la resolución denegando la reconsideración, 3 días pasado el plazo jurisdiccional para la presentación del recurso. El Municipio compareció e incluyó una Certificación del Tribunal de Circuito de Apelaciones de la cual se desprende que el recurso fue presentado sesenta (60) días después del archivo en autos de la notificación de la resolución denegando la reconsideración. Aclarada esta interrogante procesal, y teniendo el beneficio de la comparecencia de ambas partes, se expide el auto de certiorari y se dicta sentencia en la que se confirma la decisión del Tribunal de Circuito de Apelaciones ordenando la desestimación de la demanda.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión de Conformidad a la cual se une el

Juez Asociado señor Corrada del Río. El Juez Presidente señor Andréu García y el Juez Asociado señor Rebollo López no intervienen.


                              Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Bilbao Vizcaya
de Puerto Rico

     Demandante-Peticionario

        vs.                                    AC-2000-49    Certiorari

Municipio de Vega Baja

     Demandado-Recurrido

Opinión de Conformidad emitida por el Juez Asociado señor Hernández Denton a la cual se une el Juez Asociado señor Corrada del Río

San Juan, Puerto Rico, a 27 de abril de 2001.

En este caso se nos plantea la interrogante de si un panel de Tribunal de Circuito de Apelaciones puede cambiar la decisión de un primer pane del mismo foro en el mismo caso como una excepción a la doctrina de la Ley de Caso. Además, requiere que resolvamos si un acuerdo de cesión de crédito e válido cuando ha sido notificado al deudor pero se ha hecho sin e consentimiento del mismo, a pesar de que en el contrato original se requerí dicho consentimiento.

I

Antes de entrar de lleno a discutir los méritos del caso, debemos discutir un asunto de índole jurisdiccional sobre el término para presentar un recurso de apelación ante el Tribunal de Circuito de Apelaciones cuando un municipio es parte del pleito.[1] Las Reglas de Procedimiento Civil disponen que el recurso de apelación deberá ser presentado dentro del término jurisdiccional de 30 días contados desde la fecha del archivo en autos de copia de la sentencia recurrida. 32 L.P.R.A. Ap. III R. 53.1(c). Sin embargo, esta misma Regla también explica que:

> "En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública, o los municipios de Puerto Rico sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito perjudicada por la sentencia, presentando un escrito de apelación en la forma antes dispuesta y dentro del término jurisdiccional de sesenta (60) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado." Id.

Iguales términos se proveen para interponer un recurso de certiorari ante el Tribunal Supremo para revisar sentencias emitidas por el Tribunal de Circuito de Apelaciones en recursos de apelación. 32 L.P.R.A. Ap. III R. 53.1(d)(1).

Estas disposiciones han sido enmendadas en varias ocasiones recientemente. Este Tribunal aún no ha pautado si, bajo las Reglas vigentes al día de hoy, la extensión a 60 días del plazo jurisdiccional aplica en casos en los que los municipios de Puerto Rico sean parte. Entendemos que el plazo de 60 días aplica cuando un municipio es parte.

Hagamos un recuento histórico de las enmiendas a la Regla 53.1.  El 18 de julio de 1986 la Asamblea Legislativa aprobó la Ley Núm. 143. Para ese entonces (antes de la enmienda del 1986), la Regla 53.1(b) leía de la siguiente manera:

> "El recurso de revisión se formalizará presentando una solicitud en la secretaría del Tribunal Supremo dentro de los treinta (30) días siguientes al archivo en autos de una copia de la notificación de la sentencia dictada por el Tribunal Superior." 32 L.P.R.A. Ap. III R. 53.1(b), antes de enmendada por la Ley Núm. 143 de 18 de julio de 1986.

La Ley 143, por su parte, le añadió a la Regla 53.1(b) una segunda oración:

> "En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública sean parte en un pleito, el recurso de revisión se formalizará, por cualquier parte, presentando una solicitud en la Secretaría del Tribunal Supremo dentro de los sesenta (60) días siguientes al archivo en autos de una copia de la notificación de la sentencia dictada por el Tribunal Superior." Ley Núm. 143 de 18 de julio de 1986.

Como podemos ver, es en el 1986 que se establece la excepción al plazo de 30 días. Sin embargo, la palabra "municipio" no aparece en el texto de la Regla.

En Acevedo v. Asamblea Municipal del Municipio de San Juan, resolvimos que los municipios no se beneficiaban de los 60 días que proveía la Regla 53.1, según enmendada

---

[1] En 3/0 Construction, S.E. v. Municipio de Río Grande, res. el 31 de diciembre de 1998, 98 JTS 160, nos enfrentamos a un asunto análogo al de autos. En esa ocasión, mediante Resolución explicada, resolvimos que es de aplicación el plazo de 60 días para presentar un recurso de certiorari en pleitos en los cuales un municipio es parte.  La Juez Asociada

por la Ley 143. <u>Acevedo v. Asamblea Municipal del Municipio de San Juan</u>, 132 D.P.R. 820 (1993). Llegamos a esta conclusión basándonos en tres razones principales: 1) los municipios tienen personalidad jurídica independiente del Estado Libre Asociado; 2) la Exposición de Motivos de la Ley 143 establecía que la enmienda tenía el propósito de beneficiar a las agencias de Gobierno que eran representadas, de ordinario, por la Oficina del Procurador General; y 3) cuando el legislador ha querido incluir a los municipios en los términos de una ley, la práctica general ha sido el hacerlo en forma expresa. <u>Id</u>.

Tan sólo diez meses después de nuestra decisión en <u>Acevedo</u>, la legislatura enmendó la Regla 53.1 de nuevo. En esta ocasión, la legislatura sólo incluyó en la Regla la frase "y los Municipios de Puerto Rico." Después de esta enmienda del 7 de diciembre de 1993, la Regla leía: "En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública y los Municipios de Puerto Rico sean parte..." Ley Núm. 108 del 7 de diciembre de 1993. Esta enmienda tenía el único propósito de incluir expresamente a los municipios bajo la excepción al plazo de 30 días. Esta intención surge claramente de la Exposición de Motivos de la Ley: "[E]s menester enmendar la Regla 53.1(b) de Procedimiento Civil de 1979 a los efectos de aumentar a sesenta (60) días el término para formalizar el recurso de revisión en aquellos casos en que los municipios sean parte." 1993 Leyes de Puerto Rico 514, 515.

La legislatura también explicó que esta enmienda se hacía necesaria ya que el Secretario de Justicia había reiterado "que cuando el legislador ha querido incluir de la aplicación de alguna disposición legal a los municipios lo ha hecho de forma expresa." <u>Id</u>. a la pág. 514. La Asamblea Legislativa entendió que "la organización gubernamental a nivel [sic] municipal está integrada por diferentes divisiones o programas y, por tal razón, cuando una reclamación judicial culmina en sentencia adversa al municipio la preparación del recurso de revisión exige, en muchos casos, la coordinación entre dependencias municipales, lo que consume tiempo adicional a sus abogados." <u>Id</u>. Es decir que, aunque los municipios no son representados por el Procurador General, la legislatura concluyó que debían beneficiarse de los 60 días de todas maneras. A estos efectos, los incluyó expresamente.

En ese momento, pues, quedaba claro que el plazo extendido le aplicaba a los municipios. Pero la Regla fue enmendada una vez más por la Ley Núm. 249 de 25 de diciembre de 1995. Esta enmienda fue parte de una ley que enmendaba numerosas disposiciones de las Reglas de Procedimiento Civil para atemperarlas a la nueva Ley de la Judicatura de Puerto Rico de 1994. 1995 Leyes de Puerto Rico 1476, 1476-1477. Así pues, se crearon diferentes disposiciones para los recursos de apelación al Tribunal de Circuito de

---

Naveira de Rodón emitió un Voto Particular Disidente, al cual nos unimos. <u>Id</u>. La

Apelaciones y al Tribunal Supremo, y los distintos recursos de certiorari a dichos tribunales. 32 L.P.R.A. Ap. III R. 53.1. Como mencionamos anteriormente, la excepción de los 60 días quedó incluida en las Reglas que establecen los plazos para presentar los recursos de apelación a ambos tribunales, y los recursos de certiorari al Tribunal Supremo para revisar las sentencias emitidas por el Tribunal de Circuito de Apelaciones en recursos de apelación.  32 L.P.R.A. Ap. III R. 53.1(c) y 32 L.P.R.A. Ap. III R. 53.1(d)(1).

Esta enmienda hizo cambios sustanciales en la Regla 53.1(c) para ajustarla a la nueva estructura judicial, a la creación del Tribunal de Circuito de Apelaciones y a la consolidación de los tribunales inferiores en el Tribunal de Primera Instancia. Sin embargo, con respecto al plazo de 60 días, el único cambio que hubo fue de una "y" por una coma y una "o". Donde antes leía "una de sus instrumentalidades que no fuere una corporación pública **y** los Municipios de Puerto Rico sean parte," ahora lee "una de sus instrumentalidades que no fuere una corporación pública, **o** los municipios de Puerto Rico sean parte."  Ley Núm. 108 de 7 de diciembre de 1993 y 32 L.P.R.A. Ap. III R. 53.1(c). Este cambio, aunque minúsculo, puede haber creado un poco de confusión. El problema central surge de la sintaxis confusa que escogió la legislatura. No queda completamente claro del texto si los municipios se incluyen en la lista de entidades a las cuales le aplica el plazo (el Estado Libre Asociado, sus funcionarios y sus instrumentalidades que no son corporaciones públicas), o si los municipios forman parte de la frase "que no fueren corporaciones públicas," en cuyo caso no les aplicaría el plazo de 60 días por ser una de las dos clases de instrumentalidades excluidas (las corporaciones públicas y los municipios).

Concluimos que esta confusión sintáctica no es de mayor importancia dada la clara intención legislativa que se expresó en la Exposición de Motivos de la enmienda del 1993, en la que se incluyó expresamente a los municipios. Si la legislatura hubiese tenido la intención de eliminarlos, lo hubiese hecho de forma definitiva. Con regresar al lenguaje de la Regla en el 1986 hubiese bastado. Sin embargo, en el historial legislativo de la Ley 249 del 1995 no aparece ninguna referencia que demuestre la intención de la legislatura de cambiar ningún aspecto de los plazos para presentar los recursos de apelación. Si bien es cierto que no debemos "imputarle [al legislador] actuaciones inútiles, estériles o sin fin alguno," también es cierto que en esta ocasión no debemos leer en cambios tan minúsculos una intención legislativa que no surge de ningún otro lugar. Pueblo v. Pizarro Solís, 129 D.P.R. 911 (1992).

De hecho, en el Proyecto de la Cámara 1715, el lenguaje utilizado en la Regla 53.1(c) era similar al de la Ley 143 del 1986, en la cual no aparecía la referencia a los municipios. P. de la C. 1715 de 14 de febrero de 1995. Pero, en el Sustitutivo al Proyecto

controversia de autos nos permite examinar nuevamente este asunto.

de la Cámara 1715 de 24 de octubre de 1995 se vuelve a incluir la referencia a los municipios. Sustitutivo al Proyecto de la Cámara 1715 de 24 de octubre de 1995. Fue este segundo Proyecto el que se aprobó y se convirtió en la Ley 249. Esto nos indica que la legislatura tenía toda la intención de incluir a los municipios igual que lo habían hecho en el 1993. De no ser así, la Asamblea Legislativa hubiese aprobado el primer Proyecto.

Las numerosas enmiendas de la Ley 249 sólo tenían la intención de atemperar las Reglas a la nueva estructura judicial. Esta es la única intención legislativa que se desprende de la Exposición de Motivos. 1995 Leyes de Puerto Rico 1476, 1476-1477. Claramente, la enmienda de 1995 no tuvo ni el propósito ni el efecto de reducir el plazo de 60 días que tiene un municipio para presentar un recurso de apelación.

En el caso de autos surgía del "Escrito de Apelación o Solicitud de Certiorari" que presentaron los peticionarios, que el recurso de apelación del Municipio de Vega Baja ante el Tribunal de Circuito de Apelaciones se había presentado el 11 de marzo de 1999. El Tribunal de Primera Instancia había dictado sentencia el 23 de diciembre de 1998. Dicha sentencia fue notificada y archivada en autos el 7 de enero de 1999. Ni el Tribunal de Circuito de Apelaciones, ni los peticionarios se percataron de que, de ser éstas las fechas correctas, la apelación hubiese sido presentada 63 días después de la notificación, 3 días tarde.

Por esto el 6 de octubre de 2000 emitimos una orden de mostrar causa por la cual no se debía revocar la sentencia recurrida por carecer el Tribunal de Circuito de Apelaciones de jurisdicción al haberla dictado. El 20 de octubre de 2000 el Municipio incluyó en su comparecencia ante nos una Certificación del Tribunal de Circuito de Apelaciones de la cual se desprende que el recurso fue presentado 60 días después del archivo en autos de la notificación de la sentencia. Convencidos de que la apelación ante el Tribunal de Circuito de Apelaciones se presentó a los 60 días, concluimos que dicho foro tenía jurisdicción al emitir la sentencia recurrida.

Dicha sentencia fue notificada y archivada en autos el 6 de abril de 2000. La resolución del Tribunal de Circuito de Apelaciones denegando la moción de reconsideración de dicha sentencia fue notificada y archivada en autos el 11 de mayo de 2000. Los peticionarios presentaron su recurso de certiorari ante nos el 10 de julio de 2000, 60 días después. La discusión previa sobre el plazo de 60 días es igualmente aplicable a la Regla 53.1(d)(1) que establece el plazo jurisdiccional para presentar un recurso de certiorari ante este Tribunal Supremo para revisar las sentencias en recursos de apelación emitidas por el Tribunal de Circuito de Apelaciones. Por lo tanto, como el plazo jurisdiccional aplicable es el de 60 días, este Tribunal tiene jurisdicción.

Corresponde entrar a examinar la controversia principal del caso de autos.

II

Los peticionarios alegan que el Tribunal de Circuito de Apelaciones erró al llegar a una conclusión de derecho contraria a una primera decisión de otro panel del mismo tribunal, ya que el dictamen anterior, al ser final y firme, constituye la Ley del Caso. Dicha doctrina establece que:

> "las determinaciones de un tribunal apelativo constituyen 'la ley del caso' en todas aquellas cuestiones consideradas y decididas y generalmente obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración." Secretario del Trabajo v. Tribunal Superior, 95 D.P.R. 136 (1967).

Sin embargo, esta doctrina "no es férrea ni de aplicación absoluta." Noriega v. Gobernador, 130 D.P.R. 919, 931 (1992). En Puerto Rico rige el Código Civil y, por lo tanto, no existe fundamento válido para la aplicación al modo angloamericano de la ley del caso. Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 754-755 (1992). "También se reconoce que si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, el Tribunal puede aplicar una norma de derecho diferente a fin de resolver en forma justa." Don Quixote Hotel v. Tribunal Superior, 100 D.P.R. 19, 29-30 (1971). Por lo tanto, si concluimos que en este caso el primer panel del Tribunal de Circuito de Apelaciones hizo una determinación errónea que puede causar gran injusticia, entonces debemos resolver que el segundo panel actuó correctamente al hacer una excepción a la doctrina de la Ley del Caso y aplicar la regla correcta.

Los peticionarios alegan que esta excepción a la doctrina de la Ley del Caso es de aplicación solamente cuando un juez, o un panel de jueces, reconsidera y cambia **su propia decisión**. En este caso, sin embargo, un panel del Tribunal de Circuito de Apelaciones llegó a una conclusión distinta a la de otro panel apelativo, en el mismo caso. Los peticionarios alegan que, al ser paneles distintos, el segundo panel no podía invocar esta excepción. Se equivocan los peticionarios.

En Torres Cruz v. Municipio de San Juan, resolvimos que un segundo juez de primera instancia puede cambiar la decisión errónea de un primer juez en el mismo caso. Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217 (1975). Entendemos que, de la misma manera, un segundo panel apelativo puede cambiar una decisión errónea de un primer panel bajo esta excepción a la doctrina de la Ley del Caso. Ahora debemos, pues, analizar si la decisión original del primer panel del Tribunal de Circuito de Apelaciones fue errónea y hubiese causada gran injusticia.

III

En primer lugar debemos reiterar que la cesión de crédito envuelta en este caso no está cubierta por la Ley de Cesión de Cuentas por Cobrar. Dicha Ley excluye de su definición de "cuenta":

> "los fondos provenientes de contratos públicos o privados de construcción o de suministro en relación con los cuales el cedente ha prestado fianza para garantizar

el cumplimiento del contrato o el pago de las reclamaciones por trabajo o por materiales que surjan del mismo."  10 L.P.R.A. sec. 581.

En este caso, la cesión involucraba fondos públicos en un contrato de construcción garantizado con fianza. Por lo tanto, la Ley de Cesión de Cuentas por Cobrar no es de aplicación.  Ambas partes en el pleito así lo reconocen.

Ausente una ley especial que regule esta cesión, debemos utilizar las disposiciones del Código Civil para dilucidar este asunto. El Código Civil contiene disposiciones específicas sobre la transmisión de créditos. De éstas surge que el deudor que paga al acreedor original, antes de tener conocimiento de la cesión, queda libre de la obligación. 31 L.P.R.A. sec. 3942. En Cámara Insular v. Anadón, resolvimos, además, que no se exige el consentimiento del deudor para la transferencia o cesión de crédito, bastando solamente que tenga conocimiento de la transferencia para que quede obligado con el cesionario, y libre mediante pago a éste. Cámara Insular v. Anadón, 83 D.P.R. 374 (1961).

Sin embargo, también es cierto que el Código Civil reconoce el principio de autonomía contractual al establecer que "los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público."  31 L.P.R.A. sec. 3372. Además, el Código dispone que todos estos pactos y "obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos." 31 L.P.R.A. sec. 2994. Los tribunales tienen el deber de velar que los contratos se cumplan y no pueden relevar a una parte del cumplimiento de sus obligaciones, cuando el contrato sea legal y válido. Mercado Rivera v. U.C.P.R., res. 27 de junio de 1997, 97 JTS 106.

El Código Civil establece que "todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, **si no se hubiese pactado lo contrario**.  31 L.P.R.A. sec. 3029 (énfasis nuestro). Por lo tanto, la cesión es válida sin consentimiento, como discutimos anteriormente, siempre y cuando no se hubiese hecho pacto en contrario. A estos efectos hemos resuelto que se dividen los casos de incedibilidad en tres categorías: por razón de haberse concertado pacto de incedibilidad, por prohibición legal, y por la propia naturaleza del crédito. Consejo de Titulares v. C.R.U.V., 132 D.P.R. 707 (1993). Cuando el contrato original del cual surgen los créditos contiene una cláusula que condiciona la facultad de la cesión de dichos créditos a la exigencia de informarle al deudor antes del cedente poder realizar la cesión, dicha cláusula es perfectamente válida y exigible. Id. a las págs. 719-720.  Además, hemos resuelto en el pasado que una cláusula pactada en un contrato de construcción prevalece sobre un contrato de cesión otorgado posteriormente. The Commonwealth Insurance. Co. v. Compañía de Fomento Industrial, 123 D.P.R. 150 (1989).

En el caso de autos, el Municipio incluyó en el contrato de ejecución de obra una cláusula en la cual se prohíba la cesión del contrato "en todo o en parte" sin el consentimiento del Municipio. Como este contrato es válido, se convierte en ley entre

las partes. Esta cláusula constituye un pacto de incedibilidad que hace inválido el Acuerdo de Cesión entre Nortek y el BBV.

Los peticionarios alegan que esta cláusula contractual prohibía sólo la cesión del contrato y no del crédito. Sin embargo, surge del texto literal de dicha cláusula que se prohibe la cesión tanto de una parte del contrato, como de su totalidad. En este caso, lo que se está cediendo es una de las partes esenciales del contrato. En este contrato Nortek se obligó a construir una obra a cambio de que el Municipio le pagara cierta cantidad. Estas son las dos partes principales del contrato, el objeto y la causa. El crédito que Nortek cedió es el corazón del contrato. Sin crédito no hay contrato. No hace ningún sentido, por lo tanto, decir que la cláusula no se refería a la cesión del crédito. El crédito es una parte esencial del contrato, y la cláusula prohibe la cesión de cualquier parte del contrato; por lo tanto, estaba prohibida la cesión del crédito sin consentimiento del Municipio.

Concluimos, pues, que actuó correctamente el segundo panel del Tribunal de Circuito de Apelaciones al resolver que la determinación del primer panel fue errónea. La regla correcta en este caso es la enunciada por el segundo panel. La cesión de crédito no fue válida. Por lo tanto, el Municipio nunca estuvo obligado al BBV. El Municipio pagó toda su deuda a Nortek y extinguió su obligación. 31 L.P.R.A. sec. 3151. No se puede exigir que el Municipio le pague de nuevo al BBV.

En este caso se cometería una gran injusticia si aplicáramos la doctrina de la Ley del Caso. El Municipio hizo un pacto válido, le advirtió al BBV de dicho pacto, y le explicó los procedimientos que debía seguir para validar el Acuerdo de Cesión. El BBV se negó a seguir dichos procedimientos. Ahora el BBV pretende que ordenemos el desembolso de fondos públicos para pagar por segunda vez una deuda que ya se pagó, porque este asunto se decidió incorrectamente en un procedimiento previo. No debemos dejar que tal injusticia ocurra. Concluimos, por lo tanto, que el Tribunal de Circuito de Apelaciones actuó correctamente al hacer una excepción a la doctrina de la Ley del Caso. Estamos conformes, pues, con la Sentencia confirmando su decisión.


Federico Hernández Denton
Juez Asociado